UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXA A.,[1]

                           Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                           Defendant.
_____

DECISION and ORDER

1:24-CV-01235-CJS

INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review a final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Social Security Disability Insurance ("DIB") benefits. Plaintiff maintains that the Commissioner's decision must be reversed since it contains errors of law and is unsupported by substantial evidence, as more specifically set forth below.   Now before the Court is Plaintiff's application for judgment on the pleadings (ECF No. 8) and Defendant's cross-motion for the same relief (ECF No. 12).   For reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and the action is dismissed.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v.*

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim, in which "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

*Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's

decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).  "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered by the Commissioner.   However, a court may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id.*[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may

affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Plaintiff's memorandum of law provides the following summary, to which Defendant has not objected:

> On March 13, 2022, the Claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 20, 2020. (Tr. 90)  [Plaintiff claimed to be disabled due to a combination of impairments consisting of "depression, post-traumatic stress disorder, attention deficit disorder, IBD, severe anxiety, borderline personality disorder, bipolar one, scoliosis, chronic pain, and fibromyalgia." Tr. 239, 242.]  The claim was denied initially on July 14, 2022 (Tr. 115), and upon reconsideration on February 15, 2023. (Tr. 121) Thereafter, the Claimant filed a written request for hearing received on March 25, 2023. (Tr. 128) On January 18, 2024, [ALJ] Anthony Dziepak held an online video hearing. (Tr. 183) The Claimant was represented by Kasey Barrett, Esq. of Neighborhood Legal Services, Inc. and James Sarno acted as Vocational Expert at the hearing. (Tr. 196) [ALJ] Dziepak found, in a decision dated April 17, 2024, that the Claimant was not under a disability at any time from August 22, 2020, the alleged onset date, through September 30, 2021, the date last insured.
>
> ALJ Dziepak specifically found that the Claimant, born on June 5, 1997, was 24 years old and was classified as a younger individual on the date last insured. (20 CFR 404.1563) The Claimant has past relevant work as a coffee house worker, unskilled, so there was no transferability of skills from the Claimant's past work (20 CFR 404.1568) and has a high school education. (20 CFR 404.1564) ALJ Dziepak held that, considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform. (20 CFR 404.1569 and 404.1569a) (Tr. 10)

On June 14, 2024, the Claimant requested that the Appeals Council review the [ALJ's decision]. (Tr. 19) The Appeals Council, in a decision dated October 22, 2024, found no reason to review the ALJ's decision. (Tr. 5) In so doing, the [ALJ's decision] became the final decision of the Commissioner of Social Security. Plaintiff then commenced this action and this Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. Section 405(g).

[The ALJ's decision] found that the Claimant worked after the alleged onset date of August 22, 2020, but this work activity did not rise to the level of substantial gainful activity. (Tr. 243) ALJ Dziepak found that, through the date last insured, the Claimant suffered from the severe impairments of bipolar disorder, anxiety disorder, trauma-related disorder and fibromyalgia. [The ALJ found] that the Claimant, through the date last insured, had the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) except the Claimant can sit for six hours in an eight hour period; stand or walk for six hours in an eight hour period, requires a two to three minute hourly positional change allowance, can never climb ladders, ropes or scaffolds, and can never crawl, can never operate vibrating tools, and can never work at unprotected heights or with heavy moving machinery. The Claimant can perform simple, repetitive tasks learned by short demonstration, cannot interact [with the public,] can work around coworkers with interactions limited to elective superficial conversations, can have occasional interaction with supervisors, and is able to make simple work-related decisions and adapt to simple changes in a routine work setting. (Tr. 28)

[The ALJ] found that Claimant had past relevant work as a coffee house worker, DOT 311.677-010, SVP 2 unskilled light work that the Claimant actually performed at the medium level. ALJ Dziepak found that the performance of that past work is precluded, however, by the Claimant's inability to interact with the public. Accordingly, the Claimant was unable to perform his past relevant work as actually or generally performed. ALJ Dziepak held that, considering the Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Claimant can perform, specifically table worker, DOT 739.687-182, touch up screener, DOT 726.684-110, document preparer, DOT 249.587-018, photocopy machine operator, DOT 207.685-

014, garment sorter, DOT 222.687-014 and laundry sorter, DOT 361.687-014. Based on the application for Title II Social Security Disability benefits filed on March 13, 2022, the Claimant was found not to be disabled at any time from August 22, 2020, the alleged onset date, through September 30, 2021, the date last insured for Title II purposes. (Tr. 33)

ECF No. 8 at pp. 1-3.

As discussed further below, in this action Plaintiff contends that the Commissioner's decision must be reversed for essentially four reasons: 1) the ALJ did not properly consider the opinion of the mental health therapist who began treating Plaintiff after the last-insured date; 2) the ALJ erred by finding that Plaintiff could perform unskilled work while having the degree of contact with co-workers and supervisors described in the RFC finding; 3) the ALJ violated Plaintiff's due process rights by excusing the VE from the hearing before counsel's direct examination of Plaintiff; and 4) the ALJ erred by making a step-five finding that was supported by VE testimony based on estimates concerning the number of available jobs.

The Commissioner disagrees and contends that the ALJ's decision is free of legal error and supported by substantial evidence.

The Court has carefully considered the parties' submissions and the relevant portions of the administrative record.

## DISCUSSION

The ALJ did not violate Plaintiff's Due Process Rights by excusing
the VE from the hearing before counsel had examined Plaintiff

Plaintiff maintains that the ALJ violated Plaintiff's Due Process by excusing the VE from the hearing before Plaintiff's counsel had conducted any direct examination of

Plaintiff. *See*, Pl. Memo of Law, ECF No. 8 at pp. 13-14 ("Following his questioning of the VE and allowing the Claimant's counsel to pose questions to the VE, the VE was excused from the hearing.   This prevented the testimony of the Claimant on direct examination by Counsel to be considered in the ALJ's formulation of his hypothetical questions to the VE and it prevented the Claimant's counsel from considering the Claimant's testimony in her own posing of hypothetical questions to the VE[.]")[6]; *see also, id*. at p. 7 ("The VE was excused from the hearing prior to the Claimant's counsel being given time for direct examination of the Claimant.").

However, the Court finds no merit to this argument.   First, Counsel indicated that she had no further questions for the VE, and did not object to the VE being excused from the hearing. Tr. 71.   Consequently, even assuming *arguendo* that Plaintiff had some due process right to have the VE present when Plaintiff's counsel conducted her direct examination, which the Court doubts,[7] Plaintiff waived such right.

Furthermore, Plaintiff's argument is based on a fictional premise, namely, that Plaintiff's counsel conducted a direct examination of Plaintiff after the VE was excused from the hearing, and that this was prejudicial, since such testimony might have changed how the VE answered the ALJ's hypothetical questions.   In fact, though, Plaintiff's

---

[6] The last aspect of Plaintiff's argument is particularly puzzling, since Plaintiff's counsel presumably knew what information she hoped to elicit from Plaintiff, and could have easily included such information into a hypothetical to the VE, even if Plaintiff had not yet testified (even though, in fact, Plaintiff had already testified when counsel examined the VE, as discussed further below).

[7] *See, e.g., Berkowski v. Comm'r of Soc. Sec.*, 652 F. Supp. 2d 846, 861 (E.D. Mich. 2009) ("Plaintiff argues that the ALJ violated his due process rights because he gave hypothetical questions to the VE prior to the time that counsel had the opportunity to examine claimant.   . . .   [N]either Plaintiff's brief nor a reading of the record and hearing transcripts shows any basis to find that Plaintiff's due process rights were violated.") (internal quotation marks omitted).

counsel did not conduct, or attempt to conduct, any examination of Plaintiff after the VE was excused from the hearing. *See*, Tr. 71-75 (Plaintiff's counsel indicated, after the VE was excused from the hearing without objection, that she had no further testimony to offer from Plaintiff: "ALJ: Anything else? ATTY: That's it, Judge.   Thank you."). [8]   The argument therefore appears entirely specious, but, in any event, Plaintiff has not shown any prejudice from the timing of the VE's exit from the hearing.   Accordingly, this aspect of Plaintiff's motion is denied.

> The ALJ did not err in relying on the VE's testimony
> concerning the estimated number of available jobs

In finding that Plaintiff could perform other work at step five of the sequential evaluation, the ALJ relied on the VE's testimony concerning the number of available jobs. Tr. 28-29.   Plaintiff, though, maintains that the ALJ committed legal error by relying on such testimony, and that the step-five finding is not supported by substantial evidence, since the VE's testimony concerning the number of available jobs was based on estimates. *See*, Pl. Memo of Law, ECF No. 8 at p. 14 ("[T]he testimony of the VE regarding the numbers of each job given that met the ALJ's hypotheticals, and those jobs cited in the decision to deny, are admittedly estimates of numbers of jobs and the VE acknowledged that there are no sources he reviewed that give the actual numbers of

---

[8]  To the extent Plaintiff is maintaining that the ALJ somehow prevented counsel from examining Plaintiff by excusing the VE, see, e.g, Pl. Memo of Law, ECF No. 8 at p. 7 ("The VE was excused from the hearing prior to the Claimant's counsel being given time for direct examination of the Claimant."), the record shows otherwise.   Indeed, the ALJ *thrice* indicated that after the VE was excused he would allow counsel the chance to further examine Plaintiff concerning "reliability factors" about which the VE testified, concerning what an employer would tolerate in terms of an employee either being absent or off-task. Tr. 60, 70, 74. However, counsel declined to conduct any such further examination. Tr. 75.   The only reasonable conclusion to be drawn from the record is that counsel was satisfied with the direct examination of Plaintiff already conducted by the ALJ, which was completed prior to the VE's testimony.

those jobs.   This is also insufficient as a matter of law.") (citing no authority).

In this regard, Plaintiff maintains that such estimates were "insufficient as a matter of law" to carry the Commissioner's burden at step five of the sequential evaluation, even though Claimant has neither shown, nor even alleged, either that the estimates used by the VE were either inaccurate, or that the use of such estimates was prohibited by the Commissioner's regulations. *See, Id*.

However, the Court disagrees, and finds that, in general, there is nothing improper about an ALJ relying on a VE's job-number estimates, and that, such estimates may constitute substantial evidence, particularly where, as here, the claimant has not challenged the accuracy of the estimates.   Indeed, the propriety of an ALJ's reliance on such estimates is well established.   For example, the Ninth Circuit Court of Appeals recently addressed this issue, stating, in pertinent part:

> If the VE testifies that there are occupations that the hypothetical claimant can perform given the assumed limitations, the ALJ will typically ask the VE to provide examples of those occupations and "[i]nformation about the numbers of jobs in each occupation nationally." Soc. Sec. Admin., Vocational Experts Handbook 36 (June 2020).
>
> VEs may use a wide range of data sources and methodologies to generate job-number estimates. *See Biestek*, 139 S. Ct. at 1152–53 (describing different types of data sources VEs may use); *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020) (describing several methods of job-numbers estimation VEs use). ALJs must inquire about, and VEs must explain, any inconsistencies between their testimony and the DOT, a principal source of occupational information for SSA. Social Security Ruling, SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007); *Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989) (requiring ALJs to reject VE testimony that is inconsistent with the Medical-Vocational Guidelines). Although a VE

12

may be cross-examined during the proceedings about the data sources or methodologies underlying her job-number estimates, there is no requirement that a VE disclose the primary data underlying the estimates prior to, during, or after the hearing. *See* SSA Manual, supra, at §§ I-2-5-48-60, I-2-6-74 (outlining procedures for obtaining VE testimony); *see also* Vocational Experts Handbook, *supra*, at 37 (recommending that VEs have available "any vocational resource materials" that they are likely to rely on and be prepared "to thoroughly explain" how they arrived at their opinions, and specifying that "[i]n some cases, the ALJ may ask you to provide relevant portions of materials"). Indeed, the Supreme Court recently held that VE job-numbers testimony may constitute substantial evidence supporting a finding of no disability even if the VE refuses to disclose the specific, non-public data sources on which the estimates were based. *Biestek*, 139 S. Ct. at 1157.

***

[W]e have characterized uncontradicted VE job-numbers testimony as "inherently reliable" and "ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford*, 950 F.3d at 1160 (*first quoting Buck*, 869 F.3d at 1051); *see also Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192–93 (9th Cir. 2022). However, a VE may "offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar." *Biestek*, 139 S. Ct. at 1155–56. The substantial evidence inquiry for VE testimony must proceed on a "case-by-case" basis, taking "into account all features of vocational expert's testimony, as well as the rest of the administrative record." *Id*. at 1157.

*White v. Kijakazi*, 44 F.4th 828, 834–35 (9th Cir. 2022) (underlining added).

Here, again, Plaintiff has not shown that the estimates offered by the VE were inaccurate, but, rather, only baldly asserts that the use of estimates is necessarily "insufficient as a matter of law." ECF No. 8 at p. 14.   Indeed, Plaintiff's reply brief insists that, in order for the VE's testimony to amount to "substantial evidence," the VE was required to give "actual numbers of the jobs about which he was testifying." ECF No. 13 at p. 2.   However, that contention is clearly incorrect.   Consequently, this aspect of

Plaintiff's motion is also denied.

> The ALJ did not err in finding that Plaintiff could perform other work despite having limited ability to interact with coworkers and supervisors

At step three of the ALJ's sequential evaluation, when considering the severity of Plaintiff's mental impairments using the "paragraph B criteria," the ALJ found that Plaintiff had a "moderate" limitation in interacting with others. Tr. 23. In that regard, the ALJ observed that Plaintiff's mental-status-examination results "d[id] not report any deficits in social interactions," and that, at the hearing, Plaintiff "was able to respond appropriately to extensive questioning and did not demonstrate any disruptive behavior." Tr. 23. The ALJ also noted that, despite Plaintiff's impairments, Plaintiff "sustain[ed] a personal relationship" with a live-in companion,[9] maintained "part time work that required almost constant interaction with the public," served on the Board of Directors of a community organization, and attended college. Tr. 23.

Prior to reaching step four of the sequential evaluation, the ALJ found that Plaintiff had the following RFC for interacting with co-workers and supervisors:

> [C]annot perform team or tandem collaborative type work with coworkers; can work around coworkers with interactions limited to elective superficial conversations; can have occasional interaction with supervisors.

Tr. 24. When explaining the RFC finding, the ALJ further discussed Plaintiff's mental impairments, stating in pertinent part:

> Regarding [claimant's] mental impairments, the claimant's medical record documents that [claimant has] a history of treatment for symptoms of

---

[9] Plaintiff testified to having recently moved into an apartment with a girlfriend after having lived at home with parents.

depression and anxiety that have been variously diagnosed as resulting from bipolar, anxiety, and post-traumatic stress disorders since prior to the period at issue (Exhibit 1F). Although the claimant testified to disabling symptoms, [claimant's] treatment notes consistently report that [claimant was] alert and cooperative when presenting for treatment and ha[s] had benign mental exams with no deficits in cognition, attention, or memory (Exhibit 1F/11, 15, 19, 22, 26, 28, 31, 34; 2F/3, 10; 13F/18, 20, 25, 29). Indeed, although the claimant testified to having psychotic symptoms including both visual and auditory hallucinations, these are not documented in [claimant's] medical record for the period at issue. Moreover, although the claimant has reported having periods of both exhaustion and mania during the period at issue, these are report[ed] within the context of [claimant's] work as a barista that required [claimant] to constantly interact with the public (Exhibit 1F/25). Likewise, although the claimant has reported periods of increased irritability and grandiose thoughts, these have been attributed to hormone replacement therapy for gender dysphoria (Exhibit 1F/28, 31; 3F/45). Indeed, these treatment notes frequently report that the claimant's mental health symptoms are stable with treatment (Exhibit 1F/2, 5, 20, 23;3F/18, 45). <u>These symptoms indicate that [claimant] require[s] a work environment that does not require [claimant] to interact with the public and tolerate only superficial interactions with coworkers and supervisors so as not to exacerbate [claimant's] symptoms.</u>

Tr. 26 (emphasis added).

Plaintiff, though, contends that the ALJ's finding relating to ability to interact with coworkers and supervisors is erroneous, and requires remand, for essentially two reasons.   First, Plaintiff contends that there is an unexplained contradiction in the ALJ's decision concerning Plaintiff's ability to interact with supervisors, since the RFC finding indicates that Plaintiff "can work around coworkers with interactions limited to elective superficial conversations" and "can have occasional interaction with supervisors," while the ALJ's subsequent discussion of that finding indicates that Plaintiff can "tolerate only superficial interactions with coworkers and supervisors." *See*, Pl. Memo of Law, ECF No.

8 at p. 12 ("[T]he RFC in the decision provides for occasional interaction with supervisors when [the subsequent explanation] indicates the ALJ believes the Claimant can tolerate no more than superficial contact with supervisors as well [as coworkers].   This amounts to a contradictory statement within the decision that would require remand.").   Plaintiff asserts that remand is necessary for the ALJ to clarify this alleged disagreement.

Second, Plaintiff contends that if an RFC limits a claimant to only superficial contact with coworkers and supervisors, then sustained unskilled work is precluded by Social Security Ruling 85-15. *See*, Pl. Memo of Law, ECF No. 8 at p. 12 ("[A] person who can tolerate only superficial contact with coworkers and supervisors does not possess sufficient ability to interact with coworkers and supervisors required for unskilled work according to SSR 85-15."); *see also, id*. at p. 13 ("Brief and superficial contact is less than occasional contact, defined as up to one-third of the day.   This level of interaction is less than what is required by SSR 85-15[.]   . . . This ruling specifically calls for the ability to respond appropriately to supervision and coworkers as a requirement for sustaining full-time unskilled work.   The regulation does not limit that requirement to a portion of the workday or for "elective superficial conversations" as the limitation is defined in the RFC of the decision.").

The Commissioner disagrees and maintains, regarding the alleged inconsistency between the RFC finding and the ALJ's explanation, that it is a mere typographical error. That is, the ALJ did *not* mean to indicate that Plaintiff could have only superficial contact with supervisors, but, rather, that, consistent with the RFC finding, Plaintiff could have

occasional contact with supervisors and superficial interaction with coworkers.[10]   As evidence of this, the Commissioner points out that the hypothetical question posed by the ALJ to the VE, upon which the step-five finding is based, incorporated the RFC finding, and, in particular, referred to a claimant who would have "occasional interaction with supervisors." *See*, Tr. 64 (The ALJ asked the VE to consider a hypothetical claimant who could have the following contact with coworkers and supervisors: "Co-workers, nothing essential about team, tandem project-type work.   They're going to work around co-workers in a typical office setting engaging in, you know, elective simple conversations, you know, how is your day going?   Did you watch this movie that just came out?   Simple things like that.    Occasional interaction with supervisors[.]").    Alternatively, the Commissioner contends that, even "assuming *arguendo* that this is not a simple typographical error," "these two formulations are not meaningfully distinct, as caselaw from this District recognizes that an RFC for occasional contact accounts for limitations to brief and superficial contact." Def. Memo of Law, ECF No. 12-1 at p. 12.

The Court agrees with the Commissioner and finds no merit to Plaintiff's arguments on this point.   To begin with, the Court finds that the two statements by the ALJ about contact with supervisors are not necessarily contradictory or inconsistent, since the term "occasional" refers to the frequency of contact, while the term "superficial" refers to the

---

[10]  *See*, Def. Memo of Law, ECF No. 12-1 at pp. 11-12 ("Plaintiff's last challenge to the RFC is based on a typographical error – namely that the ALJ stated in the body of the decision that Plaintiff required a work environment that required [claimant] to "tolerate only superficial interactions with coworkers and supervisors so as not to exacerbate [claimant's] symptoms."   Commissioner concedes this wording is slightly different from that in the actual RFC finding which limits Plaintiff to superficial conversations with coworkers and occasional interactions with supervisors, but given the ALJ's hypothetical question to the vocational expert, it is clear the ALJ meant the RFC to reflect occasional interaction with supervisors.") (citations omitted).

nature or quality of the contact. *See, e.g., Robin A. v. Comm'r of Soc. Sec.*, No. 22-CV-112SR, 2025 WL 331302, at *6 (W.D.N.Y. Jan. 29, 2025) (Accepting "that there is a distinction between limitations for superficial interaction, which focuses on the quality of interaction, and limitations for occasional contact, which focuses on the quantity of time spent interacting," citing *Maria M. v. Comm'r of Soc. Sec.*, 21-CV-962, 2024 WL 32210, at *4 (W.D.N.Y. Jan. 3, 2024))

Moreover, an ALJ may reasonably conclude that a limitation to brief and/or superficial interaction with others is the functional equivalent of a limitation to occasional contact:

> "There ... [is] a divergence of opinion as to whether a limitation to brief and superficial interaction with others is the functional equivalent of a limitation to occasional contact." *Maria M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00962-TPK, 2024 WL 33210, at *3 (W.D.N.Y. Jan. 3, 2024). Decisions from within this District have reached different conclusions on this issue. *Compare Maria M.*, 2024 WL 33210, at *3 (concluding that the terms are not equivalent (collecting cases))[11] *with Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) ("[M]any courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence." (collecting cases)).

---

[11] *See also, Jonathan C. v. Comm'r of Soc. Sec.*, No. 22-CV-00839-MJR, 2025 WL 2231800, at *3 (W.D.N.Y. Aug. 6, 2025) ("Courts have held that "occasional interaction" and "brief and superficial contact" are not the same. *See Jackson v. Comm'r of Soc. Sec.*, No. 16-cv-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) (despite affording examining physician's opinion "great weight" the ALJ failed to incorporate opinion that claimant only capable of brief and superficial contact with others in her RFC determination, instead finding claimant capable of "occasional contact"); *Joann A.D. v. Saul*, No. 3:19-CV-1198 (AVC), 2021 WL 6337747, at *12 (D. Conn. Apr. 28, 2021)(occasional limitations and no work on teams with coworkers was inconsistent with "brief and superficial" interactions in an opinion given great weight"). Occasional interaction is a higher level of interaction than brief and superficial. *Jackson v. Comm'r of Soc. Sec.*, 2019 WL 7283518, at *7.") (footnote omitted).

There are colorable arguments on both sides of this dispute. But in reviewing the Commissioner's determination, the Court is not called upon to review the evidence *de novo* or to ascertain the best interpretation thereof. "If [the] evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (emphasis added). An ALJ in a particular case may rationally conclude that "brief and superficial" contact and "occasional" contact are functionally equivalent. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (finding "no obvious inconsistency" between an opinion that the plaintiff was moderately limited in his interactions with coworkers and could "relate to others on a superficial work basis" and the ALJ's RFC finding that the plaintiff was capable of occasional interaction with coworkers); *see also Schmidt v. Kijakazi*, No. 21-CV-0319-BHL, 2022 WL 17584173, at *3 (E.D. Wis. Dec. 12, 2022) ("In most circumstances, a reasonable person could safely assume that the superficiality of contacts has some reasonable correlation with their frequency, especially in the workplace.").

"A *per se* rule requiring reversal and remand whenever an ALJ conflates 'occasional' and 'superficial' is, therefore, at odds with the highly deferential substantial evidence standard, which itself demands nothing more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schmidt*, 2022 WL 17584173, at *3 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). In this case, the state agency reviewing psychologists opined that Plaintiff would have only moderate limitations in his ability to interact adequately with co-workers and supervisors (see Dkt. 3 at 119, 133), which is fully consistent with a limitation to occasional contact, *see Cynthia A. E. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0974 MAD DEP, 2023 WL 9116628, at *8 (N.D.N.Y. Oct. 17, 2023) ("A moderate limitation in interaction can be reasonably interpreted as an ability to occasionally interact."), adopted, 2023 WL 8432332 (N.D.N.Y. Dec. 5, 2023).

*Michael G. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00767 EAW, 2024 WL 3616282, at *5

(W.D.N.Y. July 31, 2024).

Furthermore, even assuming *arguendo* that the two statements are contradictory,

any error by the ALJ in this regard was harmless, since the Court finds it sufficiently clear, from the ALJ's decision as a whole, that the RFC finding limits the Plaintiff to occasional interaction with supervisors, and not to only "superficial interactions" with supervisors. The RFC finding itself clearly states this, and such finding was incorporated into the hypothetical question to the VE, and the VE's answer thereto, upon which the ALJ's step-five finding is based. *See, e.g.*, *Wearen v. Colvin*, No. 13-CV-6189P, 2015 WL 1038236, at *13 (W.D.N.Y. Mar. 10, 2015) ("Wearen contends that the ALJ determined that he was unable to walk more than ten feet at a time. The government counters that the ALJ's finding was that Wearen could not walk more than ten *minutes* at a time and that the reference to "*feet*" was a typographical error. The record, particularly the questions posed to and answers given by the vocational expert during the administrative hearing, demonstrate that the government's position is correct.") (emphasis in original). Consequently, the discrepancy between the RFC finding and the section of the ALJ's decision discussing that finding appears to arise from a typographical error in the explanatory discussion, which is harmless. *See, Thompson v. Barnhart*, 75 F. App'x 842, 845 (2d Cir. 2003) ("To the extent Ms. Thompson notes a discrepancy between the credibility finding made at page 8 of the ALJ decision and that noted at page 10, it is obvious from the opinion as a whole that the inclusion of the word "not" in the latter finding represents a typographical error."); *see also, Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 425 (S.D.N.Y. 2016) ("In similar circumstances, courts have found typographical errors to be harmless if it is obvious from the opinion as a whole that the error is typographical and not substantive.") (collecting cases, internal quotation marks omitted).

Neither does the Court agree with Plaintiff that a claimant with the RFC found by the ALJ in this case, as it relates to interactions with coworkers and supervisors, would necessarily be precluded, by SSR 85-15, from performing unskilled work on a sustained basis.   On this point, Plaintiff insists that "brief and superficial contact is less than occasional contact, defined as up to one-third of the day," and also "less than what is required by SSR 85-15."   Similarly, Plaintiff asserts that, "a person who can tolerate only superficial contact with coworkers and supervisors does not possess sufficient ability to interact with coworkers and supervisors required for unskilled work according to SSR 85-15."

Plaintiff, though, does not cite any particular language from SSR 85-15 that expressly supports those contentions.   Rather, Plaintiff only quotes the following general language from the ruling:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

ECF No. 8 at p. 13.   Plaintiff then merely asserts that such language is inconsistent with the RFC here:

> This ruling specifically calls for the ability to respond appropriately to supervision and coworkers as a requirement for sustaining full-time unskilled work.   The regulation [sic] does not limit that requirement to a portion of the workday or for "elective superficial conversations" as the

limitation is defined in the RFC of the decision.   This capability does not satisfy the requirements of SSR 85-15 and approval of this claim is appropriate with this limitation.

*Id*.

However, the Court is not convinced by this bald assertion, unsupported by any case authority, that an RFC finding such as the one here, limiting contact with coworkers to "interactions limited to elective superficial conversations," and contact with supervisors to "occasional interactions," would necessarily prevent a claimant from "responding appropriately to supervision and coworkers" while performing unskilled work.

As preliminary matter, it appears that the amount of contact with coworkers and supervisors that is required to meet the basic demands of unskilled work can be quite small, given that such work primarily involves working with things and not people. *See, e.g., Michael G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-605 (CFH), 2021 WL 2457637, at *9 (N.D.N.Y. June 16, 2021) ("[T]he primary work functions in the bulk of unskilled work relate to working with things rather than people. 20 C.F.R. Pt. 404, Subpt. P, app. 2, § 202.000(g). Consistent with this regulatory approach, multiple courts have considered a limitation to unskilled work to adequately accommodate a claimant's need for only "brief and superficial" social contact.") (citation and internal quotation marks omitted).

Indeed, there is no shortage of decisions upholding mental RFC findings limiting claimants to brief and/or superficial contact with coworkers and supervisors. *See, e.g.*, *Guadalupe Maria S. v. Comm'r of Soc*. Sec., No. 1:22-CV-09489-GRJ, 2023 WL 8720271, at *6 (S.D.N.Y. Dec. 18, 2023) ("To the extent the record documents impairment in Plaintiff's ability to self-regulate, adapt to changes, respond to stress, demonstrate

reliability, function in social situations, and maintain attendance, the ALJ adequately accounted for these impairments by limiting Plaintiff to work involving simple, routine, repetitive tasks in a low stress environment; *requiring no contact with co-workers and the public and no more than superficial contact with supervisors*; and demanding no more than occasional decision-making, judgment, and customary changes.") (emphasis added); *see also, Cur v. Comm'r of Soc. Sec.*, No. 19-CV-01039, 2020 WL 6488741, at *1 (W.D.N.Y. Nov. 4, 2020) (Upholding RFC finding limiting claimant to unskilled work requiring "*brief and superficial work-related, task-oriented contact with coworkers and supervisors* and occasional brief and superficial contact with the public."); *Jurado v. Comm'r of Soc. Sec.*, No. 6:18-CV-6504-DB, 2020 WL 13557887, at *10, 11 (W.D.N.Y. Aug. 17, 2020) ("[A]lthough the ALJ rejected the extreme portions of Ms. Phelps' opinions, the ALJ nevertheless restricted Plaintiff to a limited range of work, which accounted for difficulties in Plaintiff's ability to maintain attention and a schedule, and also restricted Plaintiff to simple/unskilled work that was the same day to day.   Moreover, by restricting Plaintiff to work that entailed, *at most, superficial contact with coworkers and supervisors, and no contact with the public*, the ALJ reduced Plaintiff's exposure to distractibility inherent in working with others.   . . .   [T]he Court finds no error in the ALJ's mental RFC finding.") (emphasis added).

Moreover, numerous courts have rejected the same argument being advanced here by Plaintiff. *See, e.g., Timothy R. v. Bisignano*, No. 1:24-CV-1148, 2026 WL 194678, at *11 (D.N.J. Jan. 26, 2026) ("Plaintiff next contends that the RFC limitation to occasional, brief, and superficial contact with supervisors, coworkers, and the public is "inconsistent

with basic mental demands required to perform all work." Plaintiff's Memorandum of Law, ECF No. 6, p. 13 (citing SSR 85-15)[.]  . . .  Plaintiff's argument is not well taken. This Court has previously considered and rejected a similar argument, finding that courts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public.") (collecting cases; citations, internal quotation marks and footnotes omitted); *see also, Jeffery W. v. Comm'r, Soc. Sec. Admin.*, No. 2:18-CV-00345-HZ, 2019 WL 4167129, at *7 (D. Or. Aug. 31, 2019) ("Plaintiff argues that the ALJ should have found Plaintiff disabled given her RFC assessment.   According to Plaintiff, the ALJ's assessment that Plaintiff could handle no more than superficial contact with supervisors commands a finding of disability under SSR 85-15 because "superficial contact with supervisors" is incompatible with the ability to "respond appropriately to supervision" as required for unskilled work.  . . .  Plaintiff cites no legal support for his argument, and the Court finds none. Indeed, at least three other district courts have rejected similar arguments in the context of limitations to minimal or superficial interactions with supervisors.   And the vocational expert identified at least three jobs in the national economy that Plaintiff could perform with this limitation.   Therefore, the Court finds that the ALJ's RFC limiting Plaintiff to superficial interaction with coworkers does not command a finding of disability under SSR 85-15.") (citations omitted).   Consequently, this aspect of Plaintiff's motion is also denied.

For the various reasons just discussed, this aspect of Plaintiff's motion is also denied.

<u>The ALJ Properly Evaluated the Opinion of Therapist Andrea Binner,</u>
<u>with whom Plaintiff began treating after the last-insured date</u>

The Court now comes to the primary contention in Plaintiff's motion, which is that the ALJ didn't properly evaluate the opinion of Andrea Binner, Ms Ed, LCSWR ("Binner"), who did not treat Plaintiff during the relevant period, but who, approximately two years after Plaintiff's last-insured date, opined that Plaintiff was completely disabled.

Binner began treating Plaintiff on November 11, 2021, approximately two months after Plaintiff's last insured date. Tr. 829.   Almost two years later, on August 31, 2023, Binner completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form. Tr. 829-831.   Binner checked boxes on the form indicating that Plaintiff had "marked" limitations in "understanding and remembering complex instructions," "carrying out complex instructions," "mak[ing] judgment[s] on complex work-related decisions," "interacting appropriately with the public," "interacting appropriately with supervisors," and "responding appropriately to usual work situations and to changes in routine work setting." Tr. 829-830.   Binner asserted, in that regard, that Plaintiff "suffer[ed] from Bipolar I [disorder] w/ psychotic features, PTSD-chronic, ADHD combined type, autism spectrum disorder [and] gender dysphoria." Tr. 829.   Regarding Plaintiff's purported marked inability to interact with supervisors, Binner stated that Plaintiff "has difficulty accepting feedback from folks in positions of authority.   This is related to the trauma [Plaintiff] has sustained.   [Plaintiff] needs to be in control." Tr. 830.

Notably, Binner offered no opinion as to when those alleged limitations began.   In this regard, in the section below where Binner offered the aforementioned opinions, the

printed evaluation form stated, in pertinent part: "The limitations above are assumed to be your opinion regarding current limitations only.  However, if you have sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitations you found above first present?" Tr. 830.  Binner left this answer blank, *Id.*, and thus gave no retrospective opinion concerning Plaintiff's mental functioning abilities during the relevant period at issue in this case.

In the ALJ's explanation of his RFC finding, he noted several instances in which the medical evidence amassed prior to the last-insured date did not support Plaintiff's claim of total disability.    For example, the ALJ found that, in general, Plaintiff's statements about symptoms were inconsistent with the medical evidence from that period, stating, "As for the claimant's statements about the intensity persistence, and limiting effects of [claimant's] symptoms, they are inconsistent because they are not reported on a consistent basis in the medical records from the alleged onset date of August 22, 2020 through the date last insured of September 30, 2021 to the extent that they would preclude the sustained performance of light exertional, unskilled work with the accommodations listed in this finding." Tr. 25.  More specifically, concerning Plaintiff's statements about physical pain, the ALJ stated that, "although the claimant has alleged disability in part due to . . . chronic pain, [claimant's] treatment notes consistently report that [claimant] presented for treatment in no acute distress and had benign physical exams with no deficits in strength or sensation during the period at issue." Tr. 26.  Further, the ALJ observed that Plaintiff's complaints of hallucinations were not "documented in [claimant's]

26

24

medical records for the period at issue." Tr. 26.

Similarly, the ALJ described Binner's opinion concerning Plaintiff's mental abilities as having only "limited persuasiveness," primarily since it was not supported by the medical treatment records during the relevant period between the alleged onset date and the last-insured date.   In particular, the ALJ stated:

> In reaching this conclusion, the undersigned has carefully considered the opinion of Andrea Binner, MS Ed, LCSWR. Counselor Binner reported on a form dated August 31, 2023 that she has been treating the claimant since November 11, 2021, over one month after the period at issue and opined that the claimant's mental impairments result in marked limitations (Exhibit 17F).   Counselor Binner opined in a narrative letter dated February 1, 2024 that the claimant is "unable to work" and that the counselor does not know of a single job where a supervisor would tolerate their eruption of emotion (Exhibit 22F). These assessments provide little insight into the claimant's functioning during the period at issue because Counselor Binner did not treat the claimant during the period at issue and the assessments were rendered over two years after the period at issue. Moreover, as discussed above, such extreme limitations are inconsistent with the claimant's treatment record during the period at issue. As such, they have limited persuasiveness.   However, they are sufficient to support severe medically determinable impairments characterization prior to the date last insured given initiation of treatment only six weeks after the date last insured and warranting work-related restrictions to minimize potential baseline symptom exacerbation but not total work preclusion given recent ability to perform SGA public oriented unskilled work.

Tr. 27.

Plaintiff contends that this discussion of Binner's opinion was inadequate, requiring remand.   Plaintiff first contends that the ALJ failed to provide a sufficient explanation for why he did not adopt Binner's opinions, especially since "the treatment by Ms. Binner commenced less than six weeks after the date last insured herein of September 30,

27

2021." ECF No. 8 at p. 8.    However, the Court disagrees and finds that the ALJ provided a legally-sufficient explanation for not adopting Binner's opinions.    For example, the ALJ's observation that Binner's opinion "provide[d] little insight into claimant's functioning during the period at issue" is clearly well supported, since Binner's evaluation, written two years after the last-insured date, did not indicate that the limitations referenced therein existed during the relevant period.    Similarly well-supported is the ALJ's observation that the "extreme limitations" in Binner's opinion were "inconsistent with the claimant's treatment record during the period at issue." Tr. 27.    Consequently, the Court finds no merit to this argument.

Plaintiff further contends that it was "arbitrary" of the ALJ to cite Binner's opinion as support for finding that Plaintiff's mental impairments were severe, but not to include the asserted limitations therein into the RFC finding. *Id*.    However, this argument is also meritless, considering that the showing required to satisfy the step-two standard for severity is *de minimis*. *See, McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.") (citation omitted).    As such, the finding that Binner's opinion supported the step-two severity finding in no way implies that the ALJ was required to incorporate the opinion's limitations into the RFC finding, contrary to what Plaintiff argues. *See, e.g., Bitterman v. Saul*, No. 18-CV-01063 (JMA), 2020 WL 1083637, at *4 (E.D.N.Y. Mar. 6, 2020) ("Plaintiff claims that because ALJ Allen determined that his uncontrolled diabetes

28

mellitus with diabetic retinopathy was a "severe impairment" at step two, it was error not to include any visual functional limitation in the RFC at step four.    However, an ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.    There is thus no inherent error in an ALJ's determination simply because an ALJ finds a plaintiff has a severe impairment, but does not assign corresponding functional limitations.") (citations and internal quotation marks omitted).

Plaintiff further contends that it was erroneous for the ALJ not to include functional limitations from Binner's opinion into the RFC finding, since he purportedly found Binner's opinion "persuasive." ECF No. 8 at pp. 8-9.    (Plaintiff admits that the ALJ never actually indicated that he found Binner's opinion persuasive, but nevertheless argues that the ALJ must have found the opinion somewhat persuasive, since he cited it when finding that Plaintiff's mental impairments were severe.)    Alternatively, Plaintiff implies that the ALJ "cherry picked" from Binner's opinion to find that Plaintiff's impairments were severe, but otherwise rejected the opinion when making the RFC finding. [12]    However, these arguments are just slight variations of Plaintiff's prior argument, and are also meritless, since they rely on the same logical fallacy as that argument.

Finally, as part of this same argument, Plaintiff contends that the ALJ erred in his decision by misinterpreting the evidence , inasmuch as he "appeared to give great weight

---

[12] *See*, Pl. Memo of Law, ECF No. 8 at p. 11 ("The ALJ selectively relied on the opinions of [Binner] for the purpose of deeming impairments severe . . . while excluding the parts of those opinions that would support a finding of disability.").

in his decision-making to the fact that the Claimant had previously worked full-time as a barista," when "it is clear from the record . . . that the work was never more than part-time." ECF No. 8 at p. 12.   However, Plaintiff fails to support that bald assertion with a citation to any such statement by the ALJ, whose decision actually shows just the opposite.   For example, the decision expressly found that Plaintiff's work as a barista did not amount to Substantial Gainful Activity Tr. 21,[13] and, referring to that same job, indicated that Plaintiff had "sustained *part time* work that required almost constant interaction with the public." Tr. 23 (emphasis added).[14]   Consequently, this argument also lacks merit.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 8) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No.12) for the same relief is granted, and this action is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
    March 10, 2026        ENTER:

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

[13]  *See*, ALJ's Decision, Tr. 21 ("The claimant's summary and detailed earnings records document that [claimant] earned $1,002.40 in 2020 and $255.84 in 2021 while working at Public Espresso & Coffee. These earnings do not qualify as substantial gainful employment as defined by the regulations.") (citation omitted).

[14]  The decision also made several other references to Plaintiff having sustained such work on a part-time basis after the alleged onset date, Tr. 23, 24, 26.